**FILED**
**CLERK**

9:26 am, Sep 26, 2018

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------------------X
A.F., by his father and natural guardian, ANDREW J.
FENTON, and K.P., by his father and natural guardian,
THOMAS PHELAN,

Plaintiffs

-against-

KINGS PARK CENTRAL SCHOOL DISTRICT, BOARD
OF EDUCATION OF THE KINGS PARK CENTRAL
SCHOOL DISTRICT, TIMOTHY T. EAGEN, Superintendent
of the Kings Park Central School District, and LINO E.
BRACCO, Principal, Kings Park High School,

Defendants.
--------------------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
17-CV-5467-ADS-GRB

**APPEARANCES:**

**Alexander J. Smith**
*Attorney for the Plaintiffs*
6 North Street
Middleton, New York 10940
    By: Alexander J. Smith, Esq.

**Sokoloff Stern LLP**
*Attorney for the Defendants*
179 Westbury Avenue
Carle Place, New York 11514
    By: Steven C. Stern, Esq.;
        Alison Cullen, Esq., of counsel

**SPATT, District Judge.**

      On September 19, 2017, the Plaintiff A.F., an infant, by his father and natural guardian

Andrew J. Fenton, and the Plaintiff K.P., an infant, by his father and natural guardian Thomas

Phelan (collectively, the "Plaintiffs") commenced this 42 U.S.C. § 1983 action by filing a

Complaint against the Defendants Kings Park Central School District; the Board of Education of

1

the Kings Park Central School District; Timothy T. Eagen ("Eagen"), Superintendent of the

Kings Park Central School District; and Lino E. Bracco ("Bracco"), Principal of Kings Park

High School (collectively, the "Defendants"). The Plaintiffs seek compensatory damages,

punitive damages, declaratory and injunctive relief, and attorney's fees and costs for the

Defendants' alleged violations of their rights under the First and Fourteenth Amendments to the

United States Constitution.

On December 8, 2017, the Defendants moved pursuant to Federal Rule of Civil

Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6) to dismiss the complaint for failure to state a

claim upon which relief may be granted.

## I. BACKGROUND

The following factual allegations are drawn from the Plaintiffs' complaint, and for the

purposes of the instant motion, are construed in favor of the Plaintiffs.

### A. The Parties

At all relevant times, both A.F. and K.P. were minor children, residing in Suffolk County,

New York, and were enrolled in the Kings Park Central School District. (Compl. ¶¶ 1-3.)

Andrew Fenton is the father and natural guardian of A.F. and Thomas Phelan is the father and

natural guardian of K.P. At all relevant times, both Andrew Fenton and Thomas Phelan were

residents of Suffolk County, New York and are bringing this action on A.F.'s and K.P.'s behalf.

(Compl. ¶¶ 1-3.)

The Kings Park Central School District is a public school district organized under the

laws of New York State and located in Suffolk County, New York. (Compl ¶ 4.) The Board of

Education of the Kings Park Central School District "is a duly constituted decision [ ] maker and

policymaker of the Kings Park Central School District." (Compl. ¶ 5.) At all relevant times,

Eagen was the Superintendent of the Kings Park Central School District and Bracco was the Principal of Kings Park High School.  (Compl. ¶¶ 6, 7.)

**B. The Underlying Incident**

From 2015 through 2016, the Plaintiffs were both tenth grade students attending Kings Park High School.  (Compl. ¶ 10.)  On November 4, 2015, the infant Plaintiffs, along with approximately twenty (20) other Kings Park High School students, received a text message on their cellular phones containing a video of two minor students engaged in sexual activity. (Compl ¶ 12.)  As set forth in the Complaint, "[n]either Plaintiff ever possessed the text message in school or on school property as both Plaintiffs deleted the message right after receiving it" and said text messages were received after school hours while at their respective residences.  (Compl ¶ 12.)   The parents of both Plaintiffs were notified via letters, A.F.'s letter dated November 9, 2015 and K.P.'s letter dated November 10, 2015, that the Plaintiffs were receiving one-day out of school suspensions.  (Compl. ¶ 11, 12.)  These letters were sent by Defendant Bracco and specified that the Plaintiffs' suspensions were for "inappropriate use of an electronic device." (Compl. ¶ 11.)  The Plaintiffs served their one-day suspensions from school on November 10, 2015.  (Compl ¶ 11.)

The Plaintiffs state that the Kings Park High School's disciplinary code contains a List of Infractions.  (Compl. ¶ 21.)  The List of Infractions includes Level II Infractions, including an infraction "for using cellular phones and other electronic devices (including texting) 'during instructional time;'" Level II Infractions do not allow for out-of-school suspensions.  (Compl. ¶ 22.)  In addition, the List of Infractions includes Level IV infractions for "[u]se of profanity . . . on . . . hand held devices', '[s]elling, using transmitting or possessing obscene material', [i]nappropriate texting and use of social media' and 'inappropriate use of cameras in electronic

devices,' [ ] infractions [that] involve some active or knowing conduct on the part of the student;" Level IV Infractions allow for out-of-school suspensions. (Compl. ¶ 23.) As drafted at the time of the suspensions in question, the List of Infractions "contain[ed] no reference to the 'inappropriate use of an electronic device', the term used in Bracco's November 9th and 10th letters." (Compl. ¶ 22.)

Following the Plaintiffs' suspensions, on November 18, 2015, a letter was sent from Superintendent Eagen to the students involved in the aforementioned text message incident. A.F.'s parents never received this letter and K.P.'s parents refused the offer contained in the letter. (Compl. ¶ 14, 15.) The November 18th letter offered the following:

> During the last month of your child's junior year at Kings Park High School, you may submit a letter to the Superintendent requesting a review of your child's discipline record. Upon review, if your child has no similar discipline incidents similar to the nature to the November 2015 incident, your child's record concerning this incident will be expunged. In other words, the November 2015 suspension will be removed from your child's permanent record.

(Compl. ¶ 14.) On December 9, 2015, the Plaintiffs sent letters appealing their suspensions to the Kings Park Board of Education. (Compl. ¶ 16.) The Kings Park Board of Education upheld the underlying suspensions and informed the Plaintiffs of such by a letter dated December 16, 2015. This letter included no reasons for the determination. (Compl. ¶ 17.)

On January 11, 2016, the Plaintiffs appealed the school board's determination to the New York State Education Department, in separately filed petitions. (Compl. ¶ 18.) On November 10, 2016, the New York State Commissioner of Education overturned the suspensions and ordered them expunged from the Plaintiffs' records. (Compl. ¶ 19.) The Commissioner of Education reasoned that the suspensions were improper as the Plaintiffs "did not solicit or request the video or engage in any other conduct with respect to the video at school or otherwise

or in a way that endangered the health or safety of students or adversely affected the educative process." The Commissioner also determined that the Kings Park Central School District's disciplinary actions "bore no nexus to an ensuing school disruption" and "w[ere] arbitrary and capricious." (Compl. ¶ 19.)

## C. The Relevant Procedural History

On September 19, 2017, the Plaintiffs filed the above-mentioned complaint in this Court. On December 8, 2017, the Defendants moved under Rule 12(b)(6) to dismiss the complaint, contending that the Plaintiffs' allegations, even if taken as true, fail to plausibly state a claim upon which relief can be granted. On December 28, 2017, the Plaintiffs filed an opposition to the Defendants' motion to dismiss. Thereafter, on January 9, 2018, the Defendants filed a reply in further support of their motion to dismiss. The above-mentioned motion to dismiss is fully briefed.

## II. DISCUSSION

## A. Standard of Review: FED. R. CIV. P. 12(B)(6)

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the Plaintiffs. See, e.g., Trs of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt., 843 F.3d 561, 566 (2d Cir. 2016); Walker v. Schult, 717 F.3d 119, 124 (2d Cir. 2013); Cleveland v. Caplaw Enters., 448 F.3d 518, 521 (2d Cir. 2006); Bold Elec., Inc. v. City of N.Y., 53 F.3d 465, 469 (2d Cir. 1995); Reed v. Garden City Union Free Sch. Dist., 987 F. Supp. 2d 260, 263 (E.D.N.Y. 2013).

Under the well-established Twombly standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its

face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L.Ed. 2d 929

(2007). The Second Circuit has expounded that, after Twombly, the Court's inquiry under Rule

12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations
> contained in a complaint, that tenet is inapplicable to legal
> conclusions, and [t]hreadbare recitals of the elements of a cause of
> action, supported by mere conclusory statements, do not suffice.
> Second, only a complaint that states a plausible claim for relief
> survives a motion to dismiss and [d]etermining whether a complaint
> states a plausible claim for relief will . . . be a context-specific task
> that requires the reviewing court to draw on its judicial experience
> and common sense.

Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664,

129 S. Ct. 1937, 1940, 173 L.Ed. 2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the

pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2).

Under Rule 8, a complaint is not required to allege "detailed factual allegations." Kendall v.

Caliber Home Loans, Inc., 198 F. Supp. 3d 168, 170 (E.D.N.Y. 2016) (quoting Twombly, 550

U.S. at 555). "In ruling on a motion pursuant to FED. R. CIV. P. 12(b)(6), the duty of a court 'is

merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence

which might be offered in support thereof.'" DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104,

113 (2d Cir. 2010) (quoting Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998)). The Court

"[is] not bound to accept as true a legal conclusion couched as a factual allegation." Twombly,

550 U.S. at 555. Ultimately "[w]hen there are well-pleaded factual allegations, a court should

assume their veracity and . . . determine whether they plausibly give rise to an entitlement to

relief." Iqbal, 556 U.S. at 679, 129 S. Ct. 1937.

**B. As to the Merits of the § 1983 Claims**

"A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of [his/]her federal statutory rights, or [his/]her constitutional rights or privileges." Annis v. Cty. Of Westchester, 135 F.3d 239, 245 (2d Cir. 1998) (citing Eagleston v. Guido, 41 F.3d 865, 872 (2d Cir. 1994)); Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). It is well-settled that Section 1983 does not create substantive rights, but only provides a vehicle by which parties can seek redress for violations of their federally guaranteed rights. See, e.g., Morris-Hayes v. Board of Educ. of Chester Union Free School Dist., 423 F.3d 153, 159 (2d Cir. 2005). The Plaintiffs contend that the bases for their Section 1983 claims are violations of their Fourteenth Amendment and First Amendment rights.

**1. Due Process Claims**

The Plaintiffs allege that the imposition of the school's disciplinary proceedings denied them of their right to due process as the List of Infractions is unconstitutionally vague, as it "failed to (1) give Plaintiffs adequate warning that their conduct was prohibited or (2) set out adequate standards to prevent arbitrary and/or discriminatory enforcement." (Compl. ¶ 24.) The Defendants respond that the Plaintiffs' due process claims must be dismissed as their one-day suspensions are a de minimis deprivation of their property rights; the school's disciplinary procedures were constitutionally sufficient to provide the Plaintiffs their requisite due process; and the void-for-vagueness doctrine is inapplicable.

The Due Process clause protects individuals from being deprived of property or liberty without due process of law. See, e.g., Kelly Kare, Ltd. v. O'Rourke, 930 F.2d 170, 175 (2d Cir. 1991). To plead a claim for substantive due process, a plaintiff must show that the government

action complained of was "arbitrary, conscience-shocking, or oppressive in a constitutional sense…" Cunney v. Bd. Of Trustees, 660 F.3d 612, 626 (2d Cir. 2011) (internal quotations marks omitted). "In order to shock the conscience and trigger a violation of substantive due process, official conduct must be outrageous and egregious under the circumstances; it must be truly brutal and offensive to human dignity." Lombardi v. Whitman, 485 F.3d 73, 81 (2d Cir. 2007) (internal quotations marks omitted). In the context of school disciplinary proceedings, "[i]t is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a basis in wisdom or compassion" and "§ 1983 was not intended to be a vehicle for federal [ ] court correction of errors . . . which do not rise to the level of violations of specific constitutional guarantees. Wood v. Strickland, 420 U.S. 308, 326, 95 S. Ct. 992, 1003, 43 L. Ed. 2d 214 (1975).

In contrast, to "plead a violation of procedural due process, . . . a plaintiff must first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process." J.S. v. T'Kach, 714 F.3d 99, 105 (2d Cir. 2013) (alteration, emphasis, and internal quotation marks omitted). Though the United States Constitution does not provide a property right to education, the Second Circuit has held that New York State law created a right to a free public education for individuals under the age of twenty-one and that this right is protected by the Due Process Clause of the Fourteenth Amendment. Handberry v. Thompson, 436 F.3d 52, 71 (2d Cir. 2006).

The Defendants acknowledge the property right to education, but contend that the Plaintiffs fail to state an actionable claim because their one-day suspensions are a de minimis deprivation of this right. (See Def.'s Br. at 8-9.) However, as the Defendants go on to state, "there is little precedent on this issue for external suspensions of less than ten days." (Def.'s Br.

at 9.)  In <u>Goss</u>, the Supreme Court found that "[a] short suspension is . . . a far milder deprivation than expulsion," but went on to determine that an out-of-school suspension of ten days was not a <u>de</u> <u>minimis</u> deprivation of a student's property rights.  <u>Goss v. Lopez</u>, 419 U.S. 565, 576, 95 S. Ct. 729, 737, 42 L. Ed. 2d 725 (1975); <u>compare</u> <u>MacIneirghe v. Bd. Of Educ. of E. Islip Union Free Sch. Dist</u>, No. 05-CV-4324 (JFB)(AKT), 2007 WL 2445152, at *19 (E.D.N.Y. Aug. 22, 2007) (finding that the "liberty or property interest involved in a one-day in-school suspension where the students receives instruction is <u>de</u> <u>minimis</u>.")  In contrast, courts have held that an in-school suspension of one day is a <u>de</u> <u>minimis</u> deprivation of a student's property rights, as it does not interfere with a student's presence at school or their continued instruction.  <u>See</u> <u>MacIneirghe v. Bd. Of Educ. of E. Islip Union Free Sch. Dist</u>, No. 05-CV-4324 (JFB)(AKT), 2007 WL 2445152, at *19 (E.D.N.Y. Aug. 22, 2007); <u>see also</u> <u>Wise v. Pea Ridge Sch. Dist.</u>, 855 F.2d 560, 563 n.3 (8th Cir. 1988) (finding that "[i]n-school suspension[s] do[ ] not exclude the student from school and consequently a student's property interest in a public education is not implicated.")  Although the Plaintiffs' one-day suspensions fall below the ten-day suspensions contemplated in <u>Goss</u>, they were more onerous than a one day in-school suspension, as they required the exclusion from school premises and the students did not receive instruction for the day.  Therefore, at this early stage in the litigation, the Court cannot conclude as a matter of law that the Plaintiffs' one-day out of school suspensions were a <u>de</u> <u>minimis</u> deprivation of their property right to education.

Further, the Defendants contend that even if the Court determined the deprivation was not <u>de</u> <u>minimis</u>, the Plaintiffs received the requisite due process in the imposition of their suspensions.  (<u>See</u> Def.'s Br. at 9-16.)  Procedural due process of law at a school disciplinary hearing need not include all of the procedural protection as in a criminal proceeding.  <u>Farrell v.</u>

<u>Joel</u>, 437 F.2d 160, 162 (2d Cir. 1971). Accordingly, the school disciplinary setting need only provide minimal due process protections for "mild" penalties, but must provide more significant protections for "severe" penalties. <u>Id.</u> Generally, students facing a suspension of ten days or less are entitled to an informal "give and take" with the administrator imposing the penalty, at which the student is permitted to give their version of events. <u>See</u> <u>Goss</u>, 419 U.S. at 582, 95 S. Ct. 729. The Supreme Court has provided that, "[g]iven the school's need to be able to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." <u>Bethel School Dist. No. 403 v. Fraser</u>, 478 U.S. 675, 686, 106 S. Ct. 3159, 3166, 92 L. Ed. 2d 549 (1986). The Court finds that the Plaintiffs' claim is not based on a challenge to the procedures they received from the school surrounding their suspensions, but is rather based on the alleged vague nature of the school's disciplinary infractions as applied to them.

It is crucial that the Fourteenth Amendment requires that public school disciplinary codes not be so vague as to force a person of "common intelligence" to guess what conduct the rule proscribes. <u>Baggett v. Bullitt</u>, 377 U.S. 360, 367, 84 S. Ct. 1316, 1320, 12 L. Ed.2d 377 (1964); <u>Trinity United Methodist Parish v. Board of Educ. of City School Dist. of City of Newburgh</u>, 907 F. Supp. 707, 718 (S.D.N.Y. 1995). The prohibition against vague laws and administrative rules is to protect individuals from arbitrary enforcement or ill-defined laws. <u>Smith v. Goguen</u>, 415 U.S. 566, 573, 94 S. Ct. 1242, 1251, 39 L. Ed. 2d 605 (1974); <u>see</u> <u>also</u> <u>Stephenson v. Davenport Community School Dist.</u>, 110 F.3d 1303, 1308 (8th Cir. 1997).

The crux of the Plaintiffs' due process claim is based on the "void-for-vagueness" doctrine. "Grounded in due process principles, the void-for-vagueness doctrine provides that

'[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.'" New York State Rifle and Pistol Ass'n, Inc. v. Cuomo, 804 F.3d 242, 265 (2d Cir. 2015) (quoting Cramp v. Bd. of Pub. Instruction, 368 U.S. 278, 287, 82 S. Ct. 275, 7 L. Ed. 2d 285 (1961)). "[T]he vagueness doctrine requires crafting both civil and criminal laws 'with sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them.'" Kramer v. New York City Bd. of Educ., 715 F. Supp. 2d 335, 355, (E.D.N.Y. 2010) (quoting Thibodeau v. Portuondo, 486 F.3d 61, 65 (2d Cir. 2007)). The Supreme Court has emphasized the following:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basis First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone than if the boundaries of the forbidden areas were clearly marked.

Grayned v. City of Rockford, 408 U.S. 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972) (internal quotation marks, alterations, and citations omitted).

The Supreme Court has provided two manners in which plaintiffs can claim that a statute or rule is unconstitutionally vague: (1) "a law violates due process if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits;" and (2) "a law is unconstitutionally vague if it authorizes or even encourages arbitrary and

discriminatory enforcement." Thibodeau, 486 F.3d at 65-66 (internal quotation marks and citations omitted). "The degree of vagueness tolerated in a statute varies with its type: economic regulations are subject to a relaxed vagueness test, laws with criminal penalties to a stricter one, and laws that might infringe constitutional rights to the strictest of all." VIP of Berlin, L.L.C. v. Town of Berlin, 593 F.3d 179, 186 (2d Cir. 2010) (citing Rubin v. Garvin, 544 F.3d 461, 467 (2d Cir. 2008)). In the context of a school disciplinary code "[g]iven the school's need to impose disciplinary sanctions for a wide range of unanticipated conduct disruptive of the educational process, the school disciplinary rules need not be as detailed as a criminal code which imposes criminal sanctions." Bethel School Dist. 403 v. Fraser, 478 U.S. 675, 686, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986).

When the claims are based on allegations that the statute was unconstitutionally vague as applied to the plaintiff, such as in the instant case, "there is a two part test: a court must first determine whether the statute give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited and then consider whether the law provide[s] explicit standards for those who apply [it]." United States v. Nadi, 996 F.2d 548, 550 (2d Cir. 1993) (internal quotation marks and citations omitted). "Because the statute is judged on an as applied basis, one whose conduct is clearly proscribed by the statute cannot successfully challenge it for vagueness." Id. (citing to Village of Hoffman Estates v. Flipside, Hoffman Estates, Inv., 455 U.S. 489, 495 n. 7, 102 S. Ct 1186, 1191 n. 7, 71 L. Ed. 2d 362 (1987)). "Courts ask 'whether the law presents an ordinary person with sufficient notice of or the opportunity to understand what conduct is prohibited or proscribed,' not whether a particular plaintiff actually received a warning that alerted him or her to the danger of being held to account for the behavior in question." Dickerson v. Napolitano, 604 F.3d 732, 745-46 (2d Cir. 2010) (quoting Thibodeau,

486 F.3d at 67).  The Second Circuit has guided that "a law need not achieve meticulous specificity, which would come at the cost of flexibility and reasonable breadth."  Id. at 747 (internal quotation marks and citations omitted).

Although the Defendants insist that the Plaintiffs were disciplined for receiving, watching, and retaining the explicit video on their cell phones; at this stage in the litigation the Court must take the facts as presented by the Plaintiffs as true.  Therefore, the Plaintiffs' conduct amounted to the unsolicited receipt of a text message containing explicit material outside of school hours.  Therefore, they argue that their conduct falls outside the realm of what is codified in the school's List of Infractions.  The Plaintiffs state that the term from the suspension letter, "inappropriate use of an electronic device," is not the title of any of the school's listed infractions.  The Plaintiffs go on to allege that if the Defendants applied one of the Level IV infractions to their conduct, those being "[u]se of profanity . . . on . . . hand held devices, "[s]elling, using, transmitting or possessing obscene material", "[i]nappropriate texting and use of social media" and "inappropriate use of cameras in electronic devices," that they were not on notice that their conduct of receiving and deleting a text message outside of school would cause them to receive discipline.  (Compl. ¶¶ 23, 24.)

Though discussed in the context of a substantive due process claim, the Supreme Court provided relevant guidance regarding the role of a federal court in § 1983 claims, stating:

> It is not the role of the federal court to set aside decisions of school administrators which the court may view as lack a basis in wisdom or compassion.  Public high school students do have substantive and procedural rights while at school.  But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations.  The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the

> exercise of that discretion which do not rise to the level of violations
> of specific constitutional guarantees

Wood v. Strickland, 420 U.S. 308, 326, 95 S. Ct. 992, 43 L. Ed. 2d 214 (1975) (internal citations omitted); see also Tun v. Whitticker, 398 F.3d 899, 904 (7th Cir. 2004) (determining that the disciplining of students for "horsing around in the boys' locker room" was an "overly broad reading of the district's behavior code," and did not rise to the level of a violation of due process rights).

The Court notes that the Plaintiffs do not provide any case law that has invalidated a similarly worded school disciplinary code, nor is the Court aware of any. Further, when considering the wording of the school's infractions list, the Court does not find, nor does the Plaintiff adequately allege, that it does not provide an individual with notice of what behavior is proscribed. Rather, the Plaintiffs claim is based on the school's erroneous application of the infraction list, applying it to behavior that falls outside its scope. The Court finds that the Plaintiffs' suspensions for receiving a video outside of school is a regrettable decision made by school officials, as the Plaintiffs' conduct does not appear to rise to what is required by the Level IV infractions. Though the Court does not necessarily agree with the school's disciplinary decision that the Plaintiffs' fleeting possession of this video rose to a Level IV infraction, the Court does not find that the Plaintiffs' have sufficiently plead a violation of their Fourteenth Amendment rights.

The Court finds that the Plaintiffs' situation is congruent to occurrences more frequent in the criminal law context where individuals are prosecuted in error for conduct that falls outside the scope of a statute, but said statute is not found to be unconstitutionally vague thereafter. Discussing this scenario, the Second Circuit has put forth that "[w]e doubt that such occasional

prosecution in error is much evidence that a statute is too vague." United States v. Rybicki, 354 F.3d 124, 143-44 (2d Cir. 2003) (citing to Hubbard v. United States, 514 U.S. 695, 697-98, 715, 115 S. Ct. 1754, 131 L. Ed. 2d 779 (1995) (holding that a defendant's criminal conviction under a particular statute must be reversed as his conduct fell outside the scope of the statute, but not finding that the underlying statute was unconstitutionally vague)). In sum, the Court determines that the Plaintiffs have not plausibly raised a Fourteenth Amendment violation.

### 2. First Amendment Claims

The Plaintiffs contend that the Defendants actions violated their First Amendment rights, in that the "Defendants' conduct also has had (and continues to have) an objective chilling effect upon Plaintiffs' exercise of their First Amendment rights to freedom of speech and association in that a reasonable student in Plaintiffs' positions would perceive Defendants' disciplinary actions as a threat of further punishment or retaliation if they were to engage in such activity in the future." (Compl. ¶ 28)

As an initial matter, it is well-settled that students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 506, 89 S. Ct. 733, 736, 21 L. Ed. 2d 731 (1969). However, "[s]chools may regulate students speech in three circumstances: when the speech is (1) school-sponsored, (2) offensively lewd and indecent, or (3) likely to cause substantial and material disruption of school activities." Kramer v. New York City Bd. of Educ., 715 F. Supp. 2d 335, 353 (E.D.N.Y. 2010). In the Court's view, in the instant matter, the Plaintiffs have not stated a plausible claim for violations of their First Amendment rights for the following reasons.

First, if the Court were to construe the Plaintiffs' claim as one for First Amendment retaliation, it must fail. To establish a First Amendment retaliation claim "a plaintiff must

establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.'" Scott v. Coughlin, 344 F.3d 282, 287 (2d Cir. 2003) (quoting Morales v. Mackalm, 278 F.3d 126, 131 (2d Cir. 2002)). A Section 1983 free speech claim requires first that a plaintiff allege that he engaged in Constitutionally-protected speech. See, e.g., Curley v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (stating that Section 1983 free speech claim required a showing that the defendant's actions were caused by the plaintiff's exercise of free speech rights); DeLoreto v. Ment, 944 F. Supp. 1023, 1034-35 (D. Conn. 1996) (discussing the elements of a Section 1983 free speech claim); Black v. Brewer, 302 Fed. Appx. 669, 670 (9th Cir. 2008) (stating that the first element of a school-based Section 1983 free speech claim is that the student "engaged in Constitutionally-protected speech").

Although the Court does not find as a matter of law that the alleged conduct by the school was de minis, "it is settled law that child pornography is not protected expressive speech under the First Amendment." United States v. Hotaling, 634 F.3d 725, 728 (2d Cir. 2011) (citing to New York v. Ferber, 458 U.S. 747, 758-60, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982)). Accordingly, the speech in question does not receive Constitutional protection.

Further, in order to adequately raise a First Amendment retaliation claim, a plaintiff must enumerate "'some official action [that] has caused the plaintiff to be deprived of his or her constitutional rights – in other words, there is an injury requirement to state the claim.'" Williams v. Town of Greenburgh, 535 F.3d 71, 78 (2d Cir 2008) (quoting Colombo v. O'Connell, 310 F.3d 115, 117 (2d Cir. 2002)). Accordingly, to establish a deprivation there must be "either that (1) defendants silence [plaintiffs] or (2) defendant[s'] actions had some actual, non-speculative chilling effect on his speech." Id. (internal quotations marks and citation

omitted). "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." Curley, 268 F.3d at 73. As such, a failure to allege that a plaintiff's First Amendment right were "actually chilled," is fatal to a plaintiff's First Amendment retaliation claim. Balaber-Strauss v. Town of Harrison, 405 F. Supp. 2d 427, 433 (S.D.N.Y. 2005); see also Jones v. Maples, No. 98 Civ. 7132, 2002 WL 287752, at *8 (S.D.N.Y. Feb. 26, 2002) ("a complaint which alleges only conclusory and speculative chilling of First Amendment rights should be dismissed." (citing Spear v. Town of W. Hartford, 954 F.2d 63, 67 (2d Cir. 1992))).

In the instant case, the Complaint is devoid of any allegations that this Court can construe as a chilling effect on the Plaintiffs' speech. Without allegations "of even one example of a situation in which [a plaintiff] desired to exercise [his] First Amendment rights but was chilled by defendants' alleged actions . . . [the plaintiff's] First Amendment retaliation claim must be dismissed." Mangano v. Cambriere, No. 04 Civ. 4980 (SCR)(GAY), 2007 WL 2846418, at *2 (S.D.N.Y. Sept. 27, 2007); see also Ford v. Reynolds, 326 F. Supp. 2d 392, 403 (E.D.N.Y. 2004) ("Because Plaintiffs have failed to allege any actual chill or deterrence, this Court must conclude that [the plaintiffs] did not suffer the harm necessary to support their retaliation claim."). For these reasons, the Plaintiffs have not stated a claim for First Amendment retaliation.

However, the Plaintiffs urge the Court to construe their First Amendment claims as one based on fear of future retaliation from school officials, thus effecting an objective chill on their First Amendment rights. Viewing the facts in the light most favorable to the Plaintiffs, it appears that the Plaintiffs' future retaliation claim stems from the disciplinary letter sent from Defendant Eagen, which offered that "if your child has no similar discipline incidents similar in nature to the November 2015 incident, your child's record concerning this incident will be expunged."

(Compl. ¶ 14.)  The Plaintiffs allege that "a reasonable student . . . would perceive [this] as a threat of future punishment or retaliation if they were to engage in such activity in the future." (Compl. ¶ 28.)

The Court notes that "the First Amendment prohibits government officials from encouraging the suppression of speech in a manner which 'can reasonably be interpreted as intimating that some form of punishment or adverse regulatory action will follow the failure to accede to the official's request." Zieper v. Metzinger, 474 F.3d 60, 65-66 (2d Cir. 2007) (quoting Hammerhead Enters., Inc. v. Brezenoff, 707 F.2d 33, 39 (2d Cir. 1983).  Though "governmental actions which falls short of a direct prohibition on speech may violate the First Amendment by chilling the exercise of speech . . . not every assertion of a chilling effect will be considered a judicially cognizable First Amendment violation." Levin v. Harleston, 966 F.2d 85, 89 (2d Cir. 1992) (citing Laird v. Tatum, 408 U.S. 1, 11, 13-14, 92 S. Ct. 2318, 2324-26, 33 L. Ed. 2d 154 (1972)).

Here, even when viewing the facts in the light most favorable to the Plaintiffs, they have not adequately alleged a "present objective harm or the threat of some specific future harm." Verri v. Nanna, 972 F. Supp. 773, 803 (S.D.N.Y. 1997).  "Allegations of a subjective 'chill' are not an adequate substitute for a claim of . . . specific future harm.'" Levin v. Harleston, 966 F.2d 85, 89-90 (2d Cir. 1992) (quoting Laird, 408 U.S. at 13-14, 92 S. Ct. at 2325-26.)  Thus, taking the facts as true, the Court finds that the Plaintiffs have not raised a plausible claim for First Amendment relief.  Any threat of future harm from the Defendants is entirely speculative and the offer from the school to expunge disciplinary records do not present the requisite specific future harm.

In addition, the Plaintiffs title their claim in the alternative as a First Amendment Association claim. "The Supreme Court has recognized a right of association with two distinct components – an individual's right to associate with others in intimate relationships and a right to associate with others for purposes of engaging in activities traditionally protected by the First Amendment, such as speech and other expressive conduct." Adler v. Patake, 185 F.3d 35, 42 (2d Cir. 1999) (citing Roberts v. U.S. Jaycees, 468 U.S. 609, 617-18, 104 S. Ct. 3244, 82 L Ed. 2d 462 (1984)). The Plaintiffs' free association claim to engage in "expressive" association, that being in the form of communicative text messaging, is effectively a duplication of the above discussed First Amendment claim Therefore, as the Court could not construe a viable claim for First Amendment violations, dismissal of the free association claim is also justified. See Illiano v. Mineola School Dist., 585 F. Supp. 2d 341, 355 (E.D.N.Y. 2008) (dismissing a plaintiff's freedom of association claim as duplicative of an invalid freedom of speech claim); Birmingham v. Ogden, 70 F. Supp. 2d 353, 369 (S.D.N.Y. 1999) (finding that the freedom of association claim should be dismissed as duplicative of the freedom of speech claim).

## C. As to Qualified Immunity

The Defendants seek the dismissal of the Plaintiffs' § 1983 claims with respect to Defendants Bracco and Eagen, due to their purported lack of personal involvement in the deprivation of Plaintiffs' constitutional rights and that their actions fall under the scope of qualified immunity. (Def.'s Br. at 18.)

To establish personal liability under § 1983, a plaintiff "must show by a preponderance of the evidence that the defendant was personally involved – that is, he directly participated – in the alleged constitutional deprivations." Gronowski v. Spencer, 424 F.3d 285, 293 (2d Cir. 2005); Harris v. Westchester Cty. Dep't of Corr., No. 06 Civ. 2011 (RJS), 2008 WL 953616, at *9

(S.D.N.Y. Apr. 3, 2008) (holding that to find one personally liable under § 1983, a defendant must be "personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)).

The Second Circuit defines direct participation as "intentional participation in the conduct constituting a violation of the victim's rights by one who knew of the facts rendering it illegal." Gronowski, 424 F.3d at 293 (quoting Provost, 262 F.3d at 155). "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)); see also Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) (finding that there is "no respondeat superior liability in § 1983 cases"). Personal involvement may be demonstrated using evidence that the defendant: (1) directly participated in the purported violation; (2) failed to remedy the violation after learning about it; (3) created a policy or custom under which the violation occurred; (4) was grossly negligent in supervising the subordinates who caused the condition or event; or (5) exhibited deliberate indifference by failing to act on information that indicated that the violation was happening. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Turning to the Complaint, the Plaintiffs claim that the individual Defendants were personally involved in the purported violations of their rights, in the Defendant Bracco initiated the initial suspension and Defendant Eagen, as the school's chief administrative officer and policymaker, reviewed the suspensions and offered the means for which they could be expunged from their records. (See Compl. ¶ 14.)

As to the question of qualified immunity, the Court considers "the facts alleged in the light most favorable to the plaintiff" and determined whether "there was a constitutional violation." Fierro v. City of N.Y, 341 Fed. Appx. 696, 698 (2d Cir. 2009) (summary order) (citing Clubside Inc. v. Valentin, 468 F.2d 144, 152 (2d Cir. 2006)). "If the answer to that questions is yes, then the Court must determine if that right was clearly established at the time the challenged decision was made, and whether the defendants' actions were objectively unreasonable." Id. (citing Harhay v. Town of Ellington Bd. of Educ., 323 F.3d 206, 211 (2d Cir. 2003)). It is established that "[q]ualified immunity shields an officer from suit when [he/]she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he/]she confronted." Brosseau v. Haugen, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004). "Qualified immunity is based on the common-sense rationale that the public interest requires that public officials be able to carry out their discretionary duties and act decisively without the intimidation that would result if good-faith errors in judgment were later to subject them to liability for damages." Laverne v. Corning, 522 F.2d 1144, 1149 (2d Cir. 1975).

However, having concluded that the Plaintiffs have not stated a valid claim for § 1983 relief based on a violation of their First Amendment or Fourteenth Amendment rights, the Court declines to address the issue of whether the Individual Defendants are entitled to qualified immunity against any such claims. Eskenazi-McGibney v. Connetquot Cent. Sch. Dist., 84 F. Supp. 3d 221, 237 (E.D.N.Y. 2015)

### III. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Defendants' motion to dismiss the Complaint with respect to the Plaintiffs' claims pursuant to 42 U.S.C. § 1983 and the First Amendment of the United States Constitution is GRANTED, and it is further.

**ORDERED**, that the Defendants' motion to dismiss the Complaint with respect to the Plaintiffs' claims pursuant to 42 U.S.C. § 1983 and the Due Process Clause of the Fourteenth Amendment of the United States Constitution is GRANTED, and it is further

**ORDERED**, that the Clerk of the Court is directed to close this case.


**SO ORDERED.**
Dated: Central Islip, New York
September   26, 2018

 _/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge